(89 App. Div. 306.)

KEEFUSS v. WEILMUNSTER et al.

WEILMUNSTER v. KEEFUSS et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. SALES—FRAUD—MISREPRESENTATIONS—RESCISSION—EQUITABLE RELIEF.

Where a saloon was purchased in reliance on false representations of the seller as to the receipts thereof, and, on discovering the fraud, the purchaser tendered a reconveyance, and offered to account for receipts received while she had been in possession, and demanded a reconveyance of the property conveyed as a consideration for the saloon, she was entitled to equitable relief.

2. SAME—RETENTION OF PROPERTY—EFFECT.

The fact that the purchaser of a saloon continued in custody of the premises, and secured a renewal of the liquor tax certificate during the pendency of an action to rescind the sale for fraud, and for a period of 11 months after the discovery of the fraud, was no bar to relief.

Appeal from Special Term.

Action by Emily Keefuss against Annie Weilmunster and another, and an action by Annie Weilmunster against Emily Keefuss and another. Judgment in the first case in favor of defendants, and in the second case in favor of plaintiff, and in each case the unsuccessful parties appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Martin Paskusz, for appellants.

William H. Geiger, for respondents.

WOODWARD, J. The plaintiff in Keefuss v. Weilmunster (the second action being incidental, and tried in connection with the first) brings an equitable action to have a deed heretofore executed by her to the defendant Annie Weilmunster declared null and void on the

¶ 2. See Sales, vol. 43, Cent. Dig. § 313.

ground of fraud. The learned court at Special Term found the facts
in substantial accord with the allegations of the plaintiff's complaint,
but refused to grant the relief prayed for upon the ground that the
plaintiff, having retained the property which had been delivered into
her possession by the defendants, in consideration of the transfer of
the real estate, for a long time after discovery of the fraud, had for-
feited her right to an equitable rescission of the contract. The plain-
tiff appeals from the judgment.

An examination of the case in the light of authorities which are con-
trolling here convinces us that the learned court at Special Term has
erred in making this disposition of the case. The action is not an ac-
tion at law, but is one invoking equitable jurisdiction; and equity, in
a proper case, is never impotent. The learned court finds that the
plaintiff on the 12th day of March, 1903, was the owner of the land,
buildings, etc., at Southfield, borough of Richmond and city of New
York, known as 70 New York avenue, as well as certain other prem-
ises involved in the other action; that at the same time the defendant
Charles Weilmunster, husband of the other defendant, was the owner
of a certain hotel and liquor saloon, known as No. 195 West street,
in the borough of Manhattan, together with the stock of liquors, cigars,
etc., then upon the premises, as well as a certain liquor tax certificate,
a lease of the premises for five years, etc., subject to a certain chattel
mortgage; that on the date above mentioned both of the above-named
defendants, with intent to deceive and defraud the plaintiff, and to
obtain a conveyance of the property of the plaintiff above described,
and to induce the plaintiff to purchase the property of the defendant
Charles Weilmunster, falsely and fraudulently represented to the
plaintiff that the receipts of the saloon were never less than $65 per
day, and that they averaged from $65 to $100 per day, etc.; that all
of these representations were false and untrue, and that they were
known to the defendants to be false and untrue when they were made;
that they were made by them with intent to deceive and defraud the
plaintiff; that the plaintiff relied upon the said representations, and
believed them to be true, and was induced thereby to transfer to the
defendant Annie Weilmunster the said premises No. 70 New York
avenue, and to accept the transfer of the property of the defendant
Charles Weilmunster; that prior to the commencement of this action,
and on or about the 26th day of March, 1901, and as soon as the
plaintiff discovered the falsity of the said representations, and as soon
as she discovered the whereabouts of the said defendants, which prior
thereto was unknown to her, the plaintiff tendered to reconvey and
retransfer and set over to the defendants the said saloon premises, the
said lease, etc., and offered to account to the said defendants for all
of the receipts and moneys received by her during the time that the
plaintiff had possession between the 12th day of March, 1901, and
the 26th day of March, 1901, and requested and demanded that the
defendant Annie Weilmunster reconvey to her the said premises de-
scribed in the complaint, and cancel and surrender the bond and mort-
gage described in the complaint in the action entitled "Annie Weil-
munster against Emily Keefuss and Christopher J. Keefuss," but the
defendants refused and still refuse to do so; that thereupon, and on

the 26th day of March, 1901, this action was commenced by the personal service of the summons and complaint upon both defendants.

Under this state of facts, there can be no doubt of the plaintiff's right to equitable relief. She acted promptly on discovering the fraud; she offered to reconvey all of the tangible property, and to account for all moneys which came to her in the conduct of the business; and, on the defendants refusing to reconvey the property to her, she commenced this action, not delaying a single day. In her complaint she sets forth the above facts, with others, in detail, and brings the property into court, and leaves it subject to the final judgment. She, however, continued in the physical custody of the leased premises; secured, through her husband, a renewal of the liquor tax certificate; and generally conducted the property as though she were the owner of the same, during the pendency of the action, and for a period of about 11 months after the discovery of the fraud; and it is this conduct which the learned court at Special Term has found constitutes a bar to her remedy in this action. This is, we believe, a misapprehension of the rule governing in such actions. When the plaintiff instituted this action, and asked for a reconveyance upon a retransfer by the plaintiff to the defendants of the said liquor saloon, etc., her relations to the property were changed. She assumed to be merely the trustee of the property pending the litigation, and it was her duty to handle the same in a manner to preserve, so far as possible, the full value of the premises. They were used for saloon purposes. To preserve their usefulness and value, it was necessary that a new license should be taken out, and to say that because this woman remained in possession of the premises, and did the things which were necessary to preserve the property, she has forfeited her right to the interposition of a court of equity, is to deny substantial justice to one who has been wronged through fraud. She was not obliged, as a condition of invoking the aid of a court of equity, to step out into the streets, abandoning the property and taking the chances of proving her case. She had done her full duty in the premises when she offered to return the property to the defendants before bringing the action, and then, upon a refusal by the defendants to reconvey, continuing to hold and care for the property until it should be disposed of according to the facts which should be found upon the trial. Her possession during the pendency of the action was the involuntary possession of property which she had been fraudulently induced to take, and which she had offered to return; and as she asked for a reconveyance only upon her own retransfer of the property which she had received from the defendant, which would include an accounting, there was no time in which all of the rights of the defendants were not secure. They were placed, so far as it lay in the power of the plaintiff to do so, in the same position that they were in when the fraud was discovered, and they certainly may not be heard to complain because she kept the property in condition to continue the business, in spite of the fact that the defendants refused to do her justice when their attention was called to the fraud which had been practiced. The rule that he who seeks to rescind an agreement upon the ground of fraud must place the other party in as good a situation as that in which he was when the agree-

ment was made is satisfied if the judgment asked for will accomplish that result, and in such a case no offer to return that which was received is necessary. Allerton v. Allerton, 50 N. Y. 670; Berry v. A. C. Ins. Co., 132 N. Y. 49, 55, 30 N. E. 254, 28 Am. St. Rep. 548; Vail v. Reynolds, 118 N. Y. 297, 28 N. E. 301. In the last-cited case it is said:

> "Such an action [an equitable action] is not founded upon a rescission, but is maintained for a rescission; and it is sufficient, therefore, for the plaintiff to offer in his complaint to return what he has received, and make tender of it on the trial."

In the case at bar the plaintiff, in her complaint, asked for relief only upon equitable principles, and a reconveyance of the property she had received. See Gould v. Cayuga County National Bank, 86 N. Y. 75, 83.

The second action relates to a mortgage given in connection with the main transaction, and, as new trials will be necessary, there appears no reason for discussing the questions presented further. The entire transaction appears to be vitiated by fraud, and we have no doubt that, within the rules above suggested, the plaintiff was entitled to the relief prayed for, and that there is power in the court to place the parties substantially upon the grounds which they occupied before the transaction out of which this controversy grows.

The judgments appealed from should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.